JOHN W. HUBER, United States Attorney (#7226)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
JAMIE Z. THOMAS, Assistant United States Attorney (#9420)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682



FILED
U.S. DISTRICT COURT
2018 AUG 29 P 4: 50
DISTRICT OF UTAH
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT GLEN MOURITSEN, <br><br> Defendant. | <u>FELONY INDICTMENT</u> <br><br> Counts 1-3: 18 U.S.C. § 1343 (Wire Fraud) <br><br> Counts 4-6: 18 U.S.C. § 1957 (Money Laundering) <br><br> Case: 1:18-cr-00075 <br> Assigned To : Campbell, Tena <br> Assign. Date : 8/8/2018 <br> Description: USA v. SEALED |

The Grand Jury charges:

## I.   BACKGROUND

At all times relevant to this Indictment:

1. Defendant ROBERT GLEN MOURITSEN ("MOURITSEN") was a resident of Davis County, Utah.

2. Defendant MOURITSEN sometimes conducted business as "Westheather Development Company," which is not registered with any state.

## II.   THE SCHEME AND ARTIFICE TO DEFRAUD

3. Beginning in and around 2006 and continuing to and around August 29, 2018, within the Northern Division of the District of Utah and elsewhere,

**ROBERT GLEN MOURITSEN,**

defendant herein, devised and intended to devise a scheme to defraud investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts.

4. In executing and attempting to execute the scheme and artifice to defraud, and in furtherance thereof, defendant MOURITSEN:

   a. knowingly transmitted and caused to be transmitted, wire communications in interstate commerce in violation of 18 U.S.C. § 1343 (Wire Fraud); and

   b. knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity (wire fraud), to wit, proceeds of fraudulently obtained money, in violation of 18 U.S.C. § 1957 (Money Laundering).

### III. OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

5. It was the object of the scheme and artifice to defraud for defendant MOURITSEN to fraudulently obtain money from investors through false statements, misrepresentations, deception, fraudulent conduct, and omissions of material facts, and thereafter cause the money to be diverted for defendant MOURITSEN's personal use and benefit.

### IV. MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

6. In execution and furtherance of the scheme and artifice to defraud, defendant MOURITSEN, employed the following manner and means and made one or more of the following false and fraudulent statements of material fact to investors, including, without limitation, the following:

7. Beginning in and around 2006 and continuing to in and around August 29, 2018, defendant MOURITSEN used his ecclesiastical leadership role to induce friends and fellow church congregates to provide him money in order to further a venture he called "The Project."

8. Defendant MOURITSEN represented to these victims that The Project involved a

series of complicated international transactions that would replace fiat money (legal tender by government decree) with an asset-backed currency system—for example the U.S. dollar tied to the value of a commodity like gold.

9. Defendant MOURITSEN represented to victims that The Project involved governments in Asia and Europe and required the help of attorneys and bankers.

10. Defendant MOURITSEN represented to victims that it was expensive to keep The Project moving forward.

11. Defendant MOURITSEN represented to victims that he was doing everything in his power to bring about the success of The Project but was subject to extremely strict confidentiality agreements and could not disclose many details.

12. Defendant MOURITSEN represented to victims that he had been involved in many similar projects that had all been profitable.

*Victim #1*

13. In and around 2009, defendant MOURITSEN asked Victim #1 to invest in The Project.

14. Defendant MOURITSEN indicated the investment would be short term and would yield significant returns. Specifically, he provided Victim #1 with the following promised investment return schedule:

   (a) With an investment between $25,000 and $50,000, defendant MOURITSEN offered a 15% annual return, with a premium of an additional 15% return upon successful completion of The Project.

   (b) With an investment between $50,000 and $100,000, defendant MOURITSEN offered a 15% annual return, with a premium of an additional $50,000 return upon successful completion of The Project.

   (c) With an investment between $100,000 and $250,000, defendant MOURITSEN offered a 15% annual return, with a premium of an additional 100% return upon

successful completion of The Project.

15. When defendant MOURITSEN failed to return the initial investment in a short amount of time, defendant MOURITSEN, in an effort to lull Victim #1 into a false sense of security about the investment, represented that The Project was almost done, but that defendant MOURITSEN needed additional money to continue The Project.

16. Defendant MOURITSEN represented to Victim #1 that defendant MOURITSEN was required to make a monthly contribution of $130,000 to keep The Project going.

17. Defendant MOURITSEN represented to Victim #1 that defendant MOURITSEN kept track of Victim #1's investment and that he would be "very generous" with Victim #1.

18. Over the years, Victim #1 provided a total of $326,399.51 to defendant MOURITSEN for The Project, with the most recent investment occurring in and around 2016.

### *Victim 2*

19. In and around 2017, defendant MOURITSEN asked Victim #2 to provide money for The Project.

20. Defendant MOURITSEN represented to Victim #2 that The Project was nearing completion, but that defendant MOURITSEN's compensation was held up by the Patriot Act, because the money was overseas.

21. Defendant MOURITSEN represented to Victim #2 that the money would arrive "any day now."

22. Defendant MOURITSEN represented to Victim #2 that he needed money for attorney fees, so attorneys would continue to work to get defendant MOURITSEN's money into the United States.

23. Victim #2 asked defendant MOURITSEN if he needed money for living expenses,

and defendant MOURITSEN responded that he was all right for now.

24. Later, defendant MOURITSEN asked Victim #2 for more money to keep the attorneys working on getting defendant MOURITSEN's money into the United States.

25. Over the years, Victim #2 provided a total of $165,000.00 to defendant MOURITSEN for The Project.

*Victim 3*

26. In and around July 31, 2008, defendant MOURITSEN asked Victim #3 to invest in The Project.

27. Defendant MOURITSEN indicated an investment in The Project would yield significant returns within twelve months. Specifically, defendant MOURITSEN provided Victim #3 with a promissory note with a 12% annual return due in one year.

28. After defendant MOURITSEN failed to repay Victim #3 within one year, defendant MOURITSEN represented to Victim #3 that he needed more money to pay attorneys to complete The Project.

29. Defendant MOURITSEN represented to Victim #3 that attorneys were working to bring money into the United States, but were having difficulties due to issues with Homeland Security.

30. For years, defendant MOURITSEN consistently represented to Victim #3 that the money would be coming soon.

31. Over the years, Victim #3 provided a total of $33,000.00 to defendant MOURITSEN for The Project, with the most recent investment occurring on or about September 19, 2013.

32. In furtherance of the conspiracy, defendants MOURITSEN failed to disclose to one

or more investors the following material facts, among others:

    (a) The Project failed to produce any returns in over a decade; and

    (b) Defendant MOURITSEN used a significant portion of investor money for his own personal use and benefit and for purposes other than The Project.

## Counts 1-3
## 18 U.S.C. § 1343
### (Wire Fraud)

33. All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

34. On or about the dates listed below, in the Northern Division of the District of Utah and elsewhere,

**ROBERT GLEN MOURITSEN,**

defendant herein, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing said scheme and artifice to defraud, did cause to be transmitted by means of wire communication certain writings, signs and signals, that is, an interstate wire, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | WIRE COMMUNICATIONS |
|---|---|---|
| 1 | 09/19/2013 | Deposit of a cashier's check for $8,000 drawn on Victim #3's Zions Bank account. |
| 2 | 07/26/2017 | Wire transfer of $70,000 from Victim #2's Banner Bank account to defendant MOURITSEN's Key Bank account ending in xxx5005. |
| 3 | 08/11/2017 | Wire transfer of $70,000 from Victim #2's SEI Private Trust Company account to defendant MOURITSEN's Key Bank account ending in xxx5005. |

All in violation of 18 U.S.C. §§ 1343 and 2(b).

## Counts 4-6
## 18 U.S.C. § 1957
## (Money Laundering)

35. All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

36. On or about the dates listed below, in the Northern Division of the District of Utah,

**ROBERT GLEN MOURITSEN,**

defendant herein, did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000.00, and were derived from the specified unlawful activity of Wire Fraud as alleged above, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | MONETARY TRANSACTIONS |
|---|---|---|
| 4 | 08/03/2017 | Purchase of a $42,000 cashier's check drawn on defendant MOURITSEN's Key Bank account ending in xxx5005. |
| 5 | 08/03/2017 | Transfer of $13,000 from defendant MOURITSEN's Key Bank account ending in xxx5005 to pay defendant MOURITSEN's American Express credit card. |
| 6 | 08/14/2017 | Purchase of a $75,000 cashier's check drawn on defendant MOURITSEN's Key Bank account ending in xxx5005. |

All in violation of 18 U.S.C. § 1957.

### NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. § 1343, as set forth in this Indictment, the defendant shall forfeit to the United States of America all property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, the following:

- A MONEY JUDGMENT in the approximate amount of $1,500,000.00, representing the value of any property, real or personal, constituting or derived from proceeds traceable to the scheme to defraud.

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, as set forth in this indictment, the defendant shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

- A money judgment equal to all property involved in the money laundering charges.

SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

A TRUE BILL:

/S/
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

JACOB J. STRAIN
Assistant United States Attorney